[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14785
Non-Argument Calendar

_____

Agency No. A078-408-144

MARIE FRANCINE ELOI,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 21, 2021)

Before BRANCH, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Marie Eloi petitions for review of the Board of Immigration Appeals' ("BIA") order denying her motion to rescind her removal order entered *in absentia* and to reopen her removal proceedings to apply for cancellation of removal. Eloi contends that her motion to reopen should not have been deemed time- or number-barred because it was based on the lack of proper notice of her removal proceedings under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).[1] Alternatively, Eloi argues that she was entitled to equitable tolling because she diligently pursued her immigration matters and *Pereira* constituted a fundamental change in the law. After careful review, we deny her petition.

## I.    Background

Eloi, a native and citizen of Haiti, was apprehended at Miami International Airport when she attempted to enter the United States in September 2000 with a French passport under someone else's name that she had purchased from another individual. She informed the immigration agent that interviewed her at the airport that she left Haiti because she was being persecuted and that she feared she would "be killed" if she were returned to Haiti. On September 29, 2000, the Immigration and Naturalization Service ("INS") served Eloi with a notice to appear ("NTA")

---

[1] In *Pereira*, the Supreme Court held that a notice to appear that does not specify the time and place of the initial removal proceeding does not qualify as a "notice to appear under section 1229(a)" and therefore does not trigger the stop-time rule for purposes of cancellation of removal. 138 S. Ct. at 2110, 2115.

charging her with being removable, under 8 U.S.C. § 1182(a)(6)(C)(i), as an alien who by fraud or willful misrepresentation sought to procure admission into the United States, and under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who at the time of application for admission was not in possession of a valid entry document or valid unexpired passport or identity and nationality document. The NTA stated that Eloi should appear before an immigration judge ("IJ") at a particular location with the time and date to be determined. That same day, the Executive Office of Immigration Review ("EOIR") served Eloi with a separate notice of hearing that stated that her hearing was scheduled for October 19, 2000, at 1 p.m.

Thereafter, on October 5, 2000, the immigration court mailed Eloi another notice of hearing, indicating that her master hearing was scheduled on December 29, 2000. And on December 29, 2000, the immigration court sent her another notice of hearing indicating that her hearing was scheduled for February 9, 2001. The notice stated that, if she failed to appear at the hearing for other than "exceptional circumstances beyond [her] control" she would be deemed ineligible for various forms of relief for a period of ten years from the date of the entry of a final order of removal.

Eloi failed to appear at the February 9, 2001 hearing, and the IJ conducted the removal hearing *in absentia*. The IJ found her removable as charged based on

3

documentary evidence submitted by the INS, which established the truth of the factual allegations.[2]  The IJ concluded that by failing to appear for the hearing, Eloi abandoned any pending applications for relief from removal and any such applications were denied for lack of prosecution.

In October 2001, Eloi filed a *pro se* motion to vacate her *in absentia* removal order and to reopen her removal proceedings.  She asserted that she did not attend the hearing because she had retained a person who held himself out as a lawyer to represent her, and he had told her that her hearing was rescheduled for August 2001.  She stated that when she contacted this attorney about the *in absentia* removal order she received, he claimed that he had filed an appeal on her behalf, which she later learned was untrue.  The IJ denied the motion, concluding that Eloi did not demonstrate "exceptional circumstances" for her failure to appear, failed to comply with *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), and failed to submit any completed application of relief.  There is nothing in the record to indicate that Eloi appealed from this order.

In October 2017, Eloi filed a counseled motion to reopen her removal proceedings based on exceptional circumstances, asserting that her proceedings should be reopened because she was *prima facie* eligible to apply for temporary

---

[2] An alien who fails to appear for her hearing "shall be ordered removed in absentia" upon proof that adequate written notice of the hearing was provided and that the alien is removable.  8 U.S.C. § 1229a(b)(5)(A).

protected status ("TPS").  Eloi contended that, although her motion to reopen was time- and number-barred, the IJ should reopen her proceedings under his *sua sponte* authority because exceptional circumstances existed—namely, the availability of TPS relief that did not exist at the time of her removal proceedings, the birth of her U.S. citizen son in 2008, and her 15-year residence in the United States as an upstanding member of society.

The IJ denied Eloi's motion to reopen, noting that Eloi failed to provide any argument for her failure to appear at the 2001 removal hearing, and she conceded that her motion was time- and number-barred.  The IJ found that she failed to demonstrate exceptional circumstances for *sua sponte* reopening her case because, after her initial motion to reopen was denied, Eloi failed to take any action and remained in the United States illegally.  Additionally, she applied previously for TPS in 2010, but when United States Customs and Immigration Service requested an I-601 waiver, she failed to comply, failed to explain why, and continued to live in the United States illegally.  Thus, the IJ found that "[t]he circumstances surrounding [Eloi's] situation were not beyond her control and [were] entirely of her making."  Accordingly, the IJ declined to exercise her *sua sponte* authority to reopen Eloi's case.  Eloi's appeal to the BIA was unsuccessful.  Eloi filed a petition for review with this Court, but later moved successfully to dismiss her appeal voluntarily.

In February 2019, Eloi filed a counseled motion to rescind her 2001 *in absentia* removal order and reopen her removal proceedings with the BIA. Eloi argued that the 2001 removal order should be rescinded and her case reopened because her NTA did not specify the time or place of the hearing, and it therefore did not constitute proper notice under the Supreme Court's then-recent decision in *Pereira*. Further, because the NTA was defective the IJ lacked jurisdiction over her removal proceedings. She acknowledged that, post-*Pereira*, the BIA issued its decision in *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (BIA 2018)—holding that the statutory notice requirements are satisfied so long as the alien receives a subsequent notice of hearing specifying the time and place of the removal hearing—but she argued that it did not apply to her case, as she sought to reopen her case to apply for cancellation of removal, not to terminate her proceedings.

She further argued that her motion was not time- or number-barred because a motion to reopen based on a lack of notice may be filed at any time and it was based on the new ruling in *Pereira*. She asserted that, if her proceedings were reopened, she would now be *prima facie* eligible to apply for cancellation of removal as the "stop-time" rule for purposes of her continuous presence in the United States for cancellation of removal was never triggered in light of the defective notice.

6

Finally, she requested that the BIA exercise its *sua sponte* authority to reopen her case "or alternatively . . . that the [BIA] equitably toll the filing deadline for her motion" based on "a fundamental change in the law" as a result of *Pereira*. However, although she requested equitable tolling, her arguments focused exclusively on the BIA's *sua sponte* authority to reopen her case.[3]

The BIA denied Eloi's motion. The BIA found that her motion was both time- and number-barred. Furthermore, the BIA concluded that, even if it were not time- and number-barred, it would deny the motion because Eloi admitted that she received a notice of hearing with the relevant information but she did not appear for the 2001 removal hearing, citing its decision in *Matter of Pena-Mejia*, 27 I. & N. Dec. 546 (BIA 2019), which held that an *in absentia* removal order may be entered if written notice of the time and place of the hearing was given in an NTA or in a subsequent notice of hearing. As to her request to reopen proceedings so that she could apply for cancellation of removal, the BIA explained that it was "not persuaded that equitable tolling [was] warranted with this latest untimely and number barred motion." Similarly, the BIA did not find that "exceptional circumstances" existed that would warrant exercise of its *sua sponte* authority to reopen because eligibility or potential eligibility for cancellation of removal after a

---

[3] In support of her motion, Eloi attached an application for cancellation of removal along with various supporting documents.

removal order was entered was not uncommon and did not in and of itself present

an exceptional circumstance.[4]  Eloi then filed her petition for review with this

Court.

## II.    Discussion

Eloi argues that her motion should not have been deemed time- or number-

barred because it was based on the lack of proper notice of her removal

proceedings under *Pereira*.  Alternatively, Eloi contends that the BIA abused its

discretion in denying her motion as she was entitled to equitable tolling because

she diligently pursued her immigration matters over the years, and *Pereira*

fundamentally changed the law concerning proper notice.[5]

"We review the BIA's denial of a motion to reopen for abuse of discretion.

Our review is limited to determining whether there has been an exercise of

---

[4] The BIA also noted that Eloi was not statutorily eligible for cancellation of removal, motions to reopen were generally disfavored, and Eloi had filed several motions to reopen, the latest of which was more than 18 years after she was ordered removed, which was "not the purpose of a motion to reopen."

[5] Eloi also argues that, because her NTA was defective, the IJ lacked jurisdiction over her removal proceedings.  This argument, however, is squarely foreclosed by our decision in *Perez-Sanchez v. United States Attorney General*, 935 F.3d 1148, 1154–56 (11th Cir. 2019).  Relatedly, she argues that, in order to comport with an alien's right to adequate notice and due process, an NTA must be a single document that includes all of the relevant information concerning the date, time, and place of the initial removal hearing.  We dismiss this part of her petition for lack of jurisdiction because she failed to exhaust this claim before the BIA.  *Id.* at 1157 (dismissing claim that alien's NTA violated the agency's claim-processing rules because the alien failed to exhaust the claim before the agency).  Similarly, to the extent that Eloi argues that the agency failed to comply with 8 C.F.R. § 1003.18(b) when issuing her NTA, we lack jurisdiction to review this claim because she failed to exhaust it before the BIA.  *Id.*

administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019) (quotation omitted); *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009) (same). "The moving party bears a heavy burden, as motions to reopen are disfavored, especially in removal proceedings." *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009) (internal citation omitted).

"A petitioner may file one, and only one motion for reopening of an order of removal." *Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 872 (11th Cir. 2018); *see also* 8 U.S.C. § 1229a(c)(7)(A) ("An alien may file one motion to reopen proceedings under this section . . . ."); 8 C.F.R. § 1003.2(c)(2) ("[A]n alien may file only one motion to reopen removal proceedings . . . ."); 8 C.F.R. § 1003.23(b)(4)(ii)("An alien may file only one motion pursuant to this paragraph."). A motion to reopen "must be made within 90 days of the removal order's entry, or 180 days after entry of an order of removal entered *in absentia* where failure to appear was because of exceptional circumstances." *Lin*, 881 F.3d at 872 (quotation omitted); *see also* 8 U.S.C. § 1229a(c)(7)(C)(i). Additionally, a removal order entered *in absentia* may be rescinded "upon a motion to reopen filed at any time if the alien demonstrates that [she] did not receive notice in accordance with [8 U.S.C. § 1229(a)(1) or (2)]." 8 U.S.C. § 1229a(b)(5)(C)(ii).

We have held that the statutory deadlines for a motion to reopen are "non-jurisdictional claim-processing rule[s] and [are], therefore, subject to equitable tolling." *Lin*, 881 F.3d at 872 (explaining that the 90-day deadline is subject to equitable tolling); *Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1359–63 & n.4 (11th Cir. 2013) (*en banc*) (overruling prior precedent holding that 90- and 180-day deadlines were jurisdictional and holding that they are claims-processing rules that are subject to equitable tolling). Equitable tolling requires the petitioner to show "that [she] (1) . . . has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Lin*, 881 F.3d at 872 (quotation omitted). Additionally, we have suggested, without deciding, that the numerical one-motion statutory limitation may be a non-jurisdictional claim-processing rule that is also subject to equitable tolling. *See Ruiz-Turcios v. U.S. Att'y Gen.*, 717 F.3d 847, 850 (11th Cir. 2013). Equitable tolling is an "extraordinary remedy" that should be used sparingly. *Booth v. Carnival Corp.*, 522 F.3d 1148, 1150 (11th Cir. 2008).

Here, it is undisputed that the instant motion to reopen was Eloi's third motion, and that the motion was not filed until February 2019—18 years after the entry of the IJ's removal order in February 2001. Even assuming *arguendo* that Eloi's motion was timely based on § 1229a(b)(5)(C)(ii) because it was based on her alleged lack of notice, it was still number-barred as only one motion to reopen

10

an *in absentia* removal order is statutorily authorized. *See* 8 U.S.C. § 1229a(c)(7)(A) ("An alien may file one motion to reopen proceedings under this section . . . ."); 8 C.F.R. § 1003.23(b)(4)(ii)("An alien may file only one motion pursuant to this paragraph."); *see also Montano Cisneros v. U.S. Att'y Gen.*, 514 F.3d 1224, 1228 (11th Cir. 2008) ("The regulatory provision limiting petitioners to one motion to reopen an in absentia removal order permits one motion to reopen *per* in absentia removal order."). Accordingly, the BIA did not abuse its discretion in concluding that Eloi's motion was number-barred.

Furthermore, assuming *arguendo* that the numerical one-motion rule is subject to equitable tolling, the BIA did not abuse its discretion in concluding that equitable tolling was not warranted in this case. First, Eloi bore the burden of proof to establish her entitlement to equitable tolling, *see Lin*, 881 F.3d at 872, but she failed to make any specific arguments concerning equitable tolling. Instead, her arguments focused exclusively on the BIA's *sua sponte* authority to reopen her proceedings.[6] And "[i]n the absence of any showing of [the petitioner's] own diligence or [extraordinary circumstances], [the petitioner] cannot be entitled to the rare and extraordinary remedy of equitable tolling." *San Martin v. McNeil*, 633 F.3d 1257, 1271 (11th Cir. 2011) (third alteration in original) (quotation omitted);

---

[6] And as Eloi acknowledges in her brief on appeal, we lack jurisdiction to review the BIA's denial of a motion reopen based on the agency's *sua sponte* authority. *See Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1292–93 (11th Cir. 2008).

*Sibley v. Culliver*, 377 F.3d 1196, 1204 (11th Cir. 2004) (explaining that, when the petitioner "makes no effort to demonstrate" that she satisfies the criteria, then she "is ineligible for equitable tolling").

Second, the record establishes that Eloi failed to pursue her rights diligently. She filed the underlying motion to reopen 18 years after the entry of the *in absentia* removal order. Moreover, with regard to the denials of her two prior motions to reopen, Eloi could have, but failed to, pursue appeals in this Court from those decisions. Although she filed the underlying motion promptly after the Supreme Court's decision in *Pereria*, the fact that the law may have changed in her favor does not establish that she has been pursuing her rights diligently for the past 18 years.[7]

Third, she failed to demonstrate for purposes of equitable tolling that "some extraordinary circumstance stood in [her] way." *Lin*, 881 F.3d at 872. Both the Supreme Court and our Court have repeatedly held, in a different but analogous

---

[7] Furthermore, the Supreme Court emphasized in *Pereira* that it was deciding only a "narrow question" about the continuous presence eligibility requirement for cancellation of removal and what triggers the stop-time rule for purposes of that requirement. 138 S. Ct. at 2110. Thus, while the holding in *Pereria* relates to Eloi's eligibility for the ultimate relief she would like to pursue—cancellation of removal—it does not undermine the agency's basis for ordering her removed *in absentia* over 18 years ago. Moreover, her arguments concerning lack of notice are belied by the record. She does not dispute that the NTA was personally served on her, and in her first motion to reopen in October 2001 she acknowledged that she was aware of her removal hearing, but she failed to appear because a person, whom she thought was an attorney, told her that the hearing had been rescheduled. In other words, her failure to appear at her hearing was not due to a lack of notice, but due to her misplaced reliance on information conveyed to her by someone else.

context, that a change in the law does not constitute an extraordinary circumstance for purposes of reopening a case or for purposes of equitable tolling. *See, e.g.*, *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) (holding that a change in the law does not constitute an extraordinary circumstance that justifies reopening a case under Federal Rule of Civil Procedure 60(b)(6)); *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) (same); *Howell v. Sec'y, Fla. Dep't of Corr.*, 730 F.3d 1257, 1260–61 (11th Cir. 2013) (same); *Outler v. United States*, 485 F.3d 1273, 1281–82 (11th Cir. 2007) (holding that a change in the law does not constitute an extraordinary circumstance for purposes of equitable tolling).[8]  Thus, it follows necessarily that the change in law as a result of *Pereira* was insufficient to constitute an extraordinary circumstance for purposes of equitable tolling of the one motion to reopen rule. *See Outler*, 485 F.3d at 1281–82.  Accordingly, we conclude that the BIA did not abuse its discretion in denying Eloi's third motion to reopen, and we deny her petition for review.[9]

**PETITION DENIED.**

---

[8]  The requirements for equitable tolling in the criminal or habeas context are the same as in the immigration context. *See Avila-Santoyo*, 713 F.3d at 1363 n.5 (*en banc*).

[9] Because we conclude that the BIA did not abuse its discretion in denying Eloi's third motion to reopen, we do not reach her arguments that the BIA's post-*Pereira* decisions holding that a subsequent notice of hearing cures a defective NTA were erroneously decided and should not be afforded any deference or her arguments concerning her eligibility for cancellation of removal.